Letter No. 182105 Haas-Stauffer v. Internal Revenue Service Your Honor, my name is Tom Price for Haas-Stauffer. Could I reserve three minutes for rebuttal? Yes. Thank you. May it please the Court, I'm Tom Price again for the appellant Haas-Stauffer, the estate of Carlton Stauffer, office of the son of Carlton and the executor of this estate. Your Honor, as you're probably already aware, but just to summarize quickly, Duke Hough filed on Carlton's behalf, Carlton's tax return, after Carlton had died. You know, Counsel, you have only a limited amount of time and you can give us credit for being familiar with the briefs and the facts of the case and its posture. Thank you, Your Honor. Then I will proceed directly to say that the issue in my opinion in this case is what is meant by Subsection 2B of Section 6511H of the Internal Revenue Code. In particular, whether Hough was an authorized person to file Carlton's tax return during the period of Carlton's financial disability. And to begin, I'd just like to point out that the issue of authorized, that subsection 2B does not include the word power of attorney. Not to say that the powers of attorney aren't relevant, but what we're asking here is whether Hough was authorized. There are two powers of attorney at play in this case. There was one, which was a durable power of attorney, which did, for a time, authorize Hough to file Carlton's tax returns. That was signed by Carlton in October of 2005. And as the magistrate found, was renounced by both of them. Was renounced by Hough, revoked by Carlton orally. Yeah, but that finding was wiped out. It's of no force. The district court on De Novo Review made a contrary finding.  That is correct, Your Honor, and I don't dispute that. I just wanted to point out that of the two judges who have considered this case thus far, one thought it was renounced, the other didn't. To me, that seems worthy of mention. For Your Honor, today, I believe that question is here before you on De Novo Review, because the facts underlying this issue of renunciation are not in dispute. Well, you've come to that opinion rather belatedly, counsel. I have. Because in your brief, you argue that the standard of review on this point is clear error. I did. You argue that, and you argue that in the district court. You argue it to us. And why aren't you bound by that argument rather than by the reversal of position that you have suddenly announced? If the matter before the court is one of pure law, it is subject to the law. No, no. The principle matter is a question of waiver. Parties in this court and other courts are normally bound by the positions that they assert in the trial court and in their briefs in the appellate court and cannot change those legal positions in midstream simply because they glimpsed a chance to jump on the back of a swift esteem. So why aren't you, as a matter of waiver principles, bound by the fact that up until a few days ago, you have consistently argued this point as being a point that is subject to clear error review? If Your Honor is correct about waiver, then I am bound. All right. All right? I am not aware of that, and I have been taught a lesson perhaps today. But I would have thought, well, I will stand down. Your Honor, I would proceed then to point out that I believe there was clear error, and I don't abandon that position. And the district court's finding that the power of a durable power of attorney was not renounced. All right. If the district court says that the question of the durability, the question of the viability of the durable power of attorney and matters concerning it are governed by Pennsylvania law, do you agree with that position? I do, Your Honor. All right. The district court further says that Pennsylvania law requires that renunciation, if it occurs, among other things, be accompanied by notice of the renunciation to the grantor, to the person who has given the power of attorney. Yes, sir. Okay. You agree with that proposition of law? I do. And the district court then made a finding that there was no such notice given to Carlton Stouffer. And so why don't you explain to us why that finding, Carlton Stouffer had no notice of the renunciation, why that finding was clearly erroneous? That finding was clearly erroneous, Your Honor, because Hoff's renunciation was in a face-to-face meeting with Hoff. No, that's what Hoff says in an interrogatory answer. Correct. That interrogatory answer was given after, as I understand, Hoff, twice in a sworn deposition, said that he never discussed the subject of renunciation with his father. Your Honor, I must dispute that. And I've quoted extensively from the record and these exchanges in my reply brief. The questions put to Hoff in that prior deposition all concern Carlton's revocation. There is nowhere in the prior deposition, and I've done a word search, where the word renunciation is used. The only thing Hoff was ever asked in many ways over and over again was whether Carlton had ever revoked the power of attorney. On that point, under Pennsylvania law, does the power of attorney have to be granted in writing? It does, and also by the terms of the durable power of attorney, it must be revoked by the grantor in writing. Is there any writing in this case? There is not. Doesn't that decide the issue? That decides the issue of revocation. There is no such requirement of being in writing for renunciation. What is the difference between one and the other? Renunciation is by the agent. It is the agent saying, I no longer will exercise the authority granted to me by the principal. It's the principal who revokes that authority. So we're talking about Hoff telling Carlton, I'm not going to use the power of attorney anymore. And then afterward, Hoff going to those with whom he had worked on behalf of his father to sell the father's business and telling them, I'm not going to do this anymore. I'm not exercising my rights under the power of attorney. Which he did within two weeks, if I recall, after that March of 2006 meeting with Carlton. I'm a little confused about this word search argument that you're making. So I thought the language used at deposition was termination. There is one question where after a series of questions about revocation, where the word revoke is used repeatedly, someone says to Carlton, so you never discussed terminating it at all? And Carlton says no. But in the context, if you read the transcript, it's revoke, revoke, revoke, so you never discussed terminating. I believe a fair reading of the record is that termination does not include, termination was the attorney asking about revocation in a slightly different way. But it would be for the district court to draw inferences from the testimony. How could it be clearly erroneous for Judge Wolf to say, he said he never discussed terminating it. That means to me that he never discussed renouncing it. And the word search gets you nowhere because the word renunciation is never used by Hoff even in his version of what was said. I believe the answer to that, Your Honor, is that there is one single question out of dozens and dozens, and which is the word termination. And the rest we use the word revocation or revoke. To cherry pick that one statement and declare all the rest of it irrelevant is clear error. That is the position of the appellant on that point. Now, I have very little time remaining, but it is additionally, I believe the question is not finished. If the power of attorney in general was in force, the question of authorization persists because the plaintiff, or excuse me, Carlton never informed Hoff that the tax returns needed to be filed. I agree with you. The record shows that. But I don't see in the statute any requirement that that sort of information be conveyed. The statute could have given a much broader equitable exception. It did not. It simply said that the exception will not apply so long as there is an agent who is authorized. That was Congress's choice of language. It is indeed, Your Honor. And there's no question here that Hoff was authorized. There's a question here about his authorization, Your Honor. There is. He's authorized to file federal tax returns? I beg to differ, Your Honor. Here is my response. Excuse me, but you just startled me. His power of attorney doesn't say that he's authorized to file federal tax returns? The power of attorney does. That authorization can be withdrawn, that grant of authority can be withdrawn by the grantor by his conduct. That's the point you previously argued. Now you are saying, I think, that although this document specifically authorizes the filing of federal tax returns, something more is needed for him to be authorized under the language of the statute. No, sir, with respect. I'm saying that that grant of authority was constructively withdrawn by Carlton because Carlton's failure to inform Hoff interfered with Hoff's performance of it. Did Carlton interfere with Hoff's performance? Your position below was that Carlton was on the verge of being incompetent. Indeed. So how could he have interfered with it? You mean he gave instructions to someone not to let him do something? No, sir. Carlton was never informed that the tax return needed to be filed, and moreover, the power of attorney imposes no duty on Carlton to find out. This is not a situation like in Bova where the accountant owed a duty to his client. This is a son who has a power of attorney that says in capital letters on it, you have no duty to do anything under this power of attorney. He didn't know it needed to be filed because Carlton didn't tell him. That's a constructive withdrawal of the authority. Thank you, Your Honor. May it please the Court. Julie Avetta for the United States, incorrectly named as the Internal Revenue Service. A power of attorney creates a fiduciary relationship, and you can't just turn a fiduciary relationship on and off like a light switch by stepping back from the use of it and then reengaging as needed. And that is the argument that would require the court to reverse the district court. You would have to buy that. You would have to buy that someone can step up, take on a fiduciary obligation, establish that relationship where you are acting in someone's best interest. This is in writing. Your duties and responsibilities and rights are set forth in writing. They can only be withdrawn, revoked, terminated in writing. And from that, you then need to posit that the recipient of this relationship, this fiduciary, backed out of that. Not exactly explicitly, but there's a lot of fine slicing of words here. But counsel, before you go any further, as far as this in writing, the power of attorney, as I read it, specifically provides that it can only be revoked in writing. That's correct. There is no comparable provision as to renunciation. There is no comparable provision giving the agent any means of withdrawing from the responsibility. So is your argument that he has that once you accept a durable POA, you have no way of withdrawing from it? That is not our position. All right. So he can, under some circumstances, renounce it. He can, and under Pennsylvania law, as Your Honor has noted, he does so by making a positive and unequivocal statement that he is no longer acting as a fiduciary. He is no longer acting in the best interests of the grantor. And he has to make that statement to the grantor or under circumstances where he knows it will be communicated to the grantor. And that is a fair statement of the law in Pennsylvania, and the district court correctly so held. Okay. And so you're saying that he made no such statement, that it was never communicated to the grantor, or both? We're saying that there is no clear error in the district court's finding that the sum total of the statements he made to the grantor and to other possible intermediaries, third parties, did not amount to an unequivocal and positive renunciation of his responsibility under the power of attorney agreement that the grantor actually received notice of. There is no clear error in that finding. There is a great deal of ambiguity, much of it introduced after the fact, into the record as to whether they actually met face-to-face, what they actually were able to discuss. The record fairly consistently over several years reflected that Carlton, the decedent, was unwilling to speak to his son and would not return his phone calls and would not respond to his messages due to an unrelated domestic issue going on in their family. And as a result of this, Hoff, the son, who held the power of attorney, said, I'm stepping back. This is not my fight. I'm not going to be in the middle of this anymore. Those are my words, not his, but the record is clear what his words were. He intended to cease use of the power of attorney to organize his father's affairs, and he did so cease use until he resumed use. And that's where you can't flip the switch back on. He either renounced it, in which case all of his subsequent uses of power of attorney, of authority to manage financial affairs, of the right to reach into a bank account and withdraw funds with Carlton's consent on Carlton's behalf, would have been in dereliction of a fiduciary duty he no longer had. There's something I don't understand here. You say that he withdrew his being under the power of attorney. Am I correct? He did. He had access to the account. You say he switched the power on again. I beg your pardon? You said later he switched the power on like a light switch. He could not have, Your Honor. Our position is that he had to have had it all along. Wait a minute. Was he withdrew, assuming that it was proven that he did withdraw? Is that a valid withdrawal under Pennsylvania law? If I understand Your Honor's question correctly, it's tautological. If we posit that he validly withdrew, is that valid under Pennsylvania law? If we posit that it's valid, then yes, but I'm sure that's not what you meant. Well, what did I mean? If you're asking what it would have taken, or by what means he could have accessed the account, if his withdrawal was valid? No, no, no. I want to know if he could withdraw by orally saying, I'm withdrawing. Under Pennsylvania law, he could have. Okay. Assuming he did, before he could turn on the switch again, did you need to comply with Pennsylvania law to create the power of attorney again? I think he would have, Your Honor. I think that would have been necessary because the old one, if we posit that he ripped it up, he can't re-engage with it because the grant of authority was terminated. Is there any proof that he complied with Pennsylvania law in creating the power of attorney to have effect again? There is no evidence of that in the record. All we have is the initial power of attorney, which if we posit that it's valid. Counsel, if I may. Go ahead. So I heard Judge Torea's question differently than I think his initial question was, did he validly withdraw from the power of attorney? Not did he validly withdraw from the bank account. You said yes. I beg your pardon. Thank you very much. For the clarification. Excuse me, counsel. Let me just, this may add confusion rather than clarification. The subsequent transactions, the transactions that occurred after the renunciation, I thought it was the taxpayer's position that those subsequent transactions were done pursuant to a different power of attorney entered into the so-called T.P. Rowe power of attorney, entered into in connection with specific funds in a specific account. I believe that is his position. Yeah. And what does the record show us about which power of attorney was used to make those withdrawals? Several things, Your Honor. First of all, it's correct that the account is accessed pursuant to the T. Rowe Price power of attorney. That's not in dispute. The questions are by what authority he was able to effectuate the T. Rowe Price power of attorney. He testified himself that he was able to do it because he held the durable power of attorney. One was an outgrowth of the other. It was included within that power. And the second point is, if there was a renunciation and withdrawal, as Judge Troia described it, a termination of the greater power of attorney through these very muddy words, how then could the lesser and more particular power of attorney have survived? Yeah. And we submit that there is no clear error in the district court's finding that the sum total of what was said in this record as to Hoff's intent to continue with his duties holding the power of attorney, and he was not particular. Before you get too much further down this path, I think you need to go back to Judge Troia's original question so that he can do his follow-up questions. I'd like to rest. Could you answer, please? Yes. Our position is that he did not terminate the power of attorney in the conversations that he had or did not have in early 2006 with his father. And what's the evidence of that? He testified in an early deposition that they were not on speaking terms and they did not discuss terminating the power of attorney. He repeated that testimony in a later deposition. He said he wouldn't return my calls, he wouldn't speak to me, it would have hurt my feelings if he were to terminate the power of attorney. And finally, after his death, after his father's death, Hoff wrote a letter to his late father's psychologist in which he was asking for the release of some medical records, and he said, I held my father's power of attorney until it was invalidated by his death. He gave no indication that he had ever, in his own mind, renounced any authority under that power of attorney. And it's a question of intent, which we've submitted is not a de novo question. It is a clear error question. And that intent was adequately shown on that record that Judge Wolfe was able to look at and say, he never intended to rip this up. He intended to step back from a domestic dispute and then reengage when his services were needed, and that's what happened. Is that responsive to your question, Your Honor? Somewhat. Thank you. When you are a fiduciary, when you're acting on someone's behalf, you owe them a duty to act in their best interest. We do not actually have, notably, a factual finding here, that Carlton Stouffer was financially disabled within the meaning of 6511H, the tolling provision in the Internal Revenue Code. Because it's an A and B requirement, and the district court found B, that because there had been a person authorized to manage Mr. Stouffer's financial affairs, it didn't need to reach the question whether he was financially disabled. That knocked out the case. That said, you have no tolling, your claim is not timely, I lack jurisdiction. We do not concede that there is even adequate evidence of financial disability here to prove A and B. But B is all you need to affirm. And there's no clear error in Judge Wolf's finding that the power of attorney remained in effect. The positive and unequivocal, I quit, ripping it up, I am no longer acting in your best interest, I am not your fiduciary anymore, is not there in this record, Your Honors. There is no evidence that this power of attorney was actually renounced. And the Court of Claims case law is clear that disuse of a power of attorney for any length of time, and even at the urging of the grantor, does not excuse you from 6511B. It doesn't land you within that exception. You are bound by the same clock as everybody else if you have someone who is authorized to manage your financial affairs. And Hoff was so authorized here. And there was no clear error in the district court finding such. Your response to the argument that the scope of the power of attorney was limited because Carlton did not tell him to file tax returns? The power of attorney specifically authorized him to file tax returns. It did not require that Carlton make that request of him. Indeed, if we were to assume that he was financially disabled, as Judge Selliam mentioned earlier, he would have lacked the capacity to make that request. The statute itself does not require actual knowledge, does not even require notice, doesn't require a request, doesn't require that an authorized person be under any duty at all. It requires merely that such person be authorized. And the face of the power of attorney agreement, in writing, authorized Hoff Stouffer to file tax returns, to claim tax refunds, and to manage a much greater range of financial affairs. It didn't even specifically have to address itself to taxes. But because it did, even if it were the case, which we don't believe it is, that a person authorized under 6511B must be someone who is authorized to file tax returns in particular, Hoff met that standard here. And if the Court has no further questions, we would ask that you affirm. Thank you. Your Honor, with my remaining time, I would like to point out that the use of the word fiduciary in this context for Hoff, I don't think actually fits. As we said, Hoff was, per the terms of the power of attorney, under no obligation to perform any duty on Carlton's behalf. This is in capital letters, I believe, on the very front page of the power. You have the copy to check for yourselves.  By definition, I should think. Secondly, I was pleased to hear that my fellow counsel acknowledges that the transactions which occurred after the March 2006 meeting between Carlton and his son, Hoff, the transactions in the T. Rowe Price Investment Account, were all done pursuant not to the durable power of attorney. Well, that's not what counsel to the government said, as I understood her. What she said is that the T. Rowe Price Account couldn't have been set up but for the existence of the durable power of attorney. We agree about that, Your Honor. Well, so that, therefore, that, I thought, was Judge Thoreau's point. Therefore, despite what you now claim was his renunciation, Hoff was using the durable power of attorney at that much later date, the same power of attorney that you now tell us he renounced in 2006. Then I must disagree with my counsel. Okay. And the reason is this. The durable power of attorney, Hoff used it one time, as I recall, and that was to take the money he had retrieved from New Jersey's sheet on his father's behalf and place it into the T. Rowe Price Investment Account. But how could he have used it, even for that purpose, if, indeed, he had renounced it or thought he had renounced it? This was prior to the renouncement, Your Honor, that he regained the funds from New Jersey and placed them in the T. Rowe Price Investment Account. That was, I believe, January of 2006, and the renunciation occurred in March of 2006. Now, when you put that there, T. Rowe Price, like many large institutions, has their own power of attorney form, which they sent to Hoff. They required he sign it so that he could use that power of attorney to make transactions in the account. Once the T. Rowe Price account was set up and once the T. Rowe Price power of attorney exists, that is all independent of the durable power of attorney. One is not an extension of the other, no more than my daughter is an extension of me and she'd be the first to tell you. And that's one last point I would like to make, is that Hoff never used the power of attorney again after that March meeting.